Marvin A. CHACON, Catherine L. Chacon, Johnny O. Contreras, Sally Contreras, Evelyn Bielak, Ronald Springfield and Carol Springfield, Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant–Appellee.

No. 94–5093.

United States Court of Appeals, Federal Circuit.

Jan. 31, 1995.

William Stephens, Bill Stephens & Associates, P.C., of Phoenix, AZ, submitted for plaintiffs-appellants.

Matthew S. Bode, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, submitted for defendant-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and James M. Kinsella, Asst. Director. Of counsel was Thomas W. Petersen.

Before NIES, MICHEL and PLAGER, Circuit Judges.

MICHEL, Circuit Judge.

The claims at issue in this case were brought under the Public Safety Officers' Benefits Act ("the Act"), 42 U.S.C. §§ 3796–96c (1988 & Supp. III 1991). The plaintiffs, Marvin A. Chacon et al. (collectively "Chacon"), appeal from the order of the Court of Federal Claims[1] granting the government's motion for summary judgment on the ground that the decedents in this case were not "public safety officers" as defined by the Act. Because Chacon has failed to show that the decedents were public safety officers, we affirm.

## BACKGROUND

This action arises out of the deaths of Joseph L. Chacon, Alex S. Contreras, James Ellis, and Curtis Springfield, all of whom served as members of a firefighting detail composed of inmates from the Arizona State Prison at Perryville, Arizona. Pursuant to an interagency agreement, the Arizona Department of Corrections contracted with the Arizona State Land Department to provide a labor force to the Land Department to support its regular firefighting obligations; the Perryville State Prison firefighting detail was formed in partial satisfaction of this contract. The four men were killed while helping to fight a large fire in the Tonto National Forest in Arizona on June 26, 1990. The governor of Arizona granted each of the decedents a full and unconditional posthumous pardon on November 6, 1990.

Chacon, as next of kin to one of the decedents, filed a claim for $100,000 under the Act with the Public Safety Officers' Benefits program of the Bureau of Justice Assistance ("BJA"), a unit within the Department of Justice. In an initial decision rendered on November 13, 1991, the claim was denied on the ground that the decedent was not a "public safety officer" for purposes of the Act. Chacon administratively appealed the initial decision, and at a hearing held on March 4, 1992, Chacon presented four witnesses and several documents in support of his claim. On June 25, 1992, the hearing officer affirmed the initial decision, denying the claim on the same ground. Chacon next appealed the hearing officer's decision, and on August 25, 1992, the Director of the BJA issued a final decision denying the death benefits claim. The core of the Director's decision was as follows:

> We have previously determined that in order to be serving a public agency in an official capacity, one must be an officer, employee, volunteer, or [in a] similar relationship of performing services as a part of a public agency. To have such a relationship with a public agency, an individual must be officially recognized or designated as functionally within or a part of the public agency.*

Ariz.Rev.Stat. § 31–254(J)[2] defines the status of the decedents under State law.

---

1. Effective October 29, 1992, the Claims Court was renamed the "United States Court of Federal Claims." Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992).

2. According to section 31–254(A) of the Arizona Code, "[e]ach prisoner who is engaged in productive work in any state prison or institution under the jurisdiction of the department of corrections as a part of the prison industries pro-

They were not employees of the State, nor of its Department of Corrections. Clearly, the decedents cannot be said to be public safety officers serving a public agency in an official capacity. By explicitly prohibiting the decedents from qualifying as state employees ... the statute demonstrates conclusively that the State did not intend to recognize the decedents as "functionally within or a part of the public agency." Based on this statute, they certainly cannot be said to be public safety officers.

\* *Legal Interpretations of the Public Safety Officers' Benefits Act,* U.S. Dep't of Justice, 1981, page 9.

On October 14, 1992, having exhausted his administrative remedies, Chacon filed a claim for $100,000 in the Court of Federal Claims. The trial court, in its decision of January 27, 1994, granted the government's motion for summary judgment and dismissed the complaint. The trial court, like the three previous administrative decision-makers, concluded that the decedents were not public safety officers for purposes of the Act. It is this decision from which Chacon now appeals.

STANDARD OF REVIEW

■ Judicial review of a BJA denial of death benefits under the Act is limited to three inquiries: "(1) whether there has been substantial compliance with statutory [sic] and implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the Government officials involved; and (3) whether there was substantial evidence supporting the decision." *Morrow v. United States,* 647 F.2d 1099, 1102, 227 Ct.Cl. 290, *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981).

■ Because the Court of Federal Claims held Chacon unentitled to benefits under the Act as a matter of statutory interpretation, granting the government's motion for summary judgment, we review its decision *de novo. Shelden v. United States,* 7 F.3d 1022, 1026 (Fed.Cir.1993).

ANALYSIS

■ *A.* Section 3796(a) of the Act provides, in relevant part, that "[i]n any case in which the [BJA] determines ... that a public safety officer has died as the direct and proximate result of personal injury sustained in the line of duty, the [BJA] shall pay a benefit of $100,000 [to the officer's next of kin.]" 42 U.S.C. § 3796(a) (Supp. III 1991). Thus, to recover under the Act, Chacon must show, *inter alia,* that the decedents were "public safety officers" for purposes of the Act—that is, that they were individuals serving a public agency in an official capacity as public safety officers of some kind. 42 U.S.C. § 3796b(7) (Supp. III 1991) (" 'public safety officer' means an individual serving a public agency in an official capacity, with or without compensation, as ... a firefighter"). Specifically, he must show that the decedents were public safety officers serving as "firefighters." *See* 42 U.S.C. § 3796b(3) (Supp. III 1991) (" 'firefighter' includes an individual serving as an officially recognized or designated member of a legally organized volunteer fire department"). Because we resolve Chacon's claim based on his failure to show that the decedents were public safety officers, we do not reach the question whether decedents were "firefighters" as statutorily defined.

No one disputes that the agencies involved in this case—the Arizona Department of Corrections and Land Department—are public agencies. The case turns, therefore, on whether the decedents were "serving" either of them "in an official capacity." The Act does not, however, define what it means to "serv[e] in an official capacity."

■ When we consider the merits of a party's challenge to an agency's interpretation of a statute it has been charged with administering, we take our analytic framework from the Supreme Court's decision in *Chevron U.S.A. Inc. v. Natural Resources*

---

gram shall receive for his work such compensation as the director of the department of corrections shall determine." ARIZ.REV.STAT.ANN. § 31–254(A) (1990). Under subsection (J), to which the Director referred, "[n]othing in this section is intended to restore, in whole or in part, the civil rights of any prisoner. *No prisoner compensated under this section shall be considered as an employee or to be employed by the state or the department of corrections ....*" ARIZ.REV.STAT.ANN. § 31–254(J) (1990) (emphasis added).

*Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the Court described the proper approach in such situations:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2782 (footnotes omitted). Importantly, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted" in order to be required to affirm it. *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. Where, as here, "the legislative delegation to an agency on a particular question is implicit rather than explicit," we must affirm any "reasonable interpretation made by the administrator of [the] agency." *Id.* at 844, 104 S.Ct. at 2782 (footnote omitted). *Accord Newman v. Teigeler,* 898 F.2d 1574, 1576 (Fed.Cir.1990); *Beneficial Corp. and Subsidiaries v. United States,* 814 F.2d 1570, 1574 (Fed.Cir.1987).

The Director, in his final decision in this case, relied upon the interpretation of the "serving in an official capacity" previously established by the BJA:

> In order to be serving a public agency in an official capacity one must be an officer, employee, volunteer, or similar relationship of performing services as a part of a public agency. To have such a relationship with a public agency, an individual must be officially recognized or designated as functionally within or a part of the public agency.

U.S. Dep't of Justice, *Legal Interpretations of the Public Safety Officers' Benefits Act* 9 (1981). Chacon does not argue that this regulatory definition of "serving in an official capacity" is unreasonable, and we see nothing unreasonable in it. Instead, he argues that it has been misapplied in this case.

The Director concluded that, given the express terms by which section 31–254(J) of the Arizona Code precludes a participant in an inmate labor program from being "considered as an employee or to be employed by the state," the decedents' participation in the fire detail could not make them employees of the state, the Department of Corrections, or any agency with which the Department contracted,[3] thus taking them outside the above-quoted definition. The trial court reached the same conclusion on the same ground. Chacon has presented no statutory or decisional authority to refute this aspect of the definition contained in the statute, arguing instead that he need not be an "employee" to come within the definition, as it also covers "volunteers."

*B.* The Director also concluded, however, that the decedents were not "volunteers," reasoning that "while the decedents could and did volunteer to be assigned to the firefighting crew, this assignment was but one way in which inmates could satisfy their 'gainful activity' obligation." The trial court followed a similar line of reasoning:

> [I]t would be inappropriate to find prison inmates, who are involuntarily committed to the custody and control of the Department of Corrections for punishment for

---

**3.** *Accord* Ariz.Rev.Stat. § 31–251(E) (1993) ("Notwithstanding any other law, no prisoner given a work assignment or required to perform any labor by the state department of corrections shall be considered an employee or to be employed by the state or the state department of corrections, regardless of whether the prisoner is compensated or not, nor shall an employee-employer relationship exist between the prisoner and the state department of corrections or the state for any purpose and none of the rights or privileges otherwise accorded to employees by law shall accrue to such prisoners.").

their crimes, to be officers serving that agency or to be "volunteering" service to the agency. . . . As required by statute and the [interagency] agreement, they were paid for their services. . . . Moreover, decedents were required to perform gainful activity during their incarceration; while the choice to join the fire suppression detail was termed "voluntary," serving on *some* detail was mandatory.

Chacon's bare assertion that "[t]he decedents were on the Firefighting Crew strictly because they volunteered—period," fails to engage the trial court's reasoning, and thus fails to overcome it.

Finally, Chacon argues that the trial court's conclusion regarding the voluntariness of the inmates' service on the firefighting detail is unreasonable in light of the fact that the decedents were granted full and unconditional posthumous pardons. Relying on a passage from *Ex Parte Garland*, 71 U.S. (4 Wall.) 333, 380, 18 L.Ed. 366 (1866), Chacon makes the somewhat startling assertion that, in light of the pardons they received, "under the law, the decedents are no longer, and never were, prisoners." We cannot agree.

■ While it may make sense to say that, given the pardon, the decedents, if alive, could no longer be treated as if they had felony convictions, it strains credulity to claim that one must pretend they were not legally prisoners for the time they were in prison. In *Garland*, the Supreme Court described the effect of a presidential pardon thusly:

> A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil

rights; it makes him, as it were, a new man, and gives him new credit and capacity.

> There is only this limitation to its operation: it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment.

*Id.* As the limitation the Court describes makes clear, pardons do not erase the fact that one was once convicted of a crime. Instead, pardons eliminate any *further* effect of having been convicted.

■ As the trial court held, "[a] pardon does not revise historical facts; it merely eliminates certain future punishments that might otherwise be imposed on the pardoned individual as a result of those facts." *See* 59 AM.JUR.2D PARDON & PAROLE § 50 (1987) ("Executive clemency does not eliminate the fact of conviction; it merely results in ending further punishment for the offense of which the person pardoned was convicted."). For example, had the decedents been pardoned before their deaths, they would have been released from prison. Further, they would not have been subject to the many prohibitions affecting persons with convictions, such as the federal proscription against "receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g) (1988). Chacon cites no cases, however, wherein a pardoned convict is treated as if he had never been convicted for purposes of determining the legal consequences of events occurring while he was in prison. His argument regarding the effect of the decedents' posthumous pardons is therefore unavailing.

■ Thus, even if decedents' detail were otherwise a legally-organized volunteer fire department under state law, a question we do not decide, they could not be deemed "members" of the same because they were not "volunteers." We reject Chacon's contention that the decedents were public safety officers because they were "volunteers." [4]

---

4. Chacon does not argue, and we see no basis for concluding, that the decedents were otherwise "officially recognized or designated as function-ally within or a part of" the public agencies under the terms of the BJA definition.

**514**

CONCLUSION

Chacon has failed to demonstrate that the BJA's regulatory interpretation of what it means to "serve in an official capacity" for purposes of the Public Safety Officers' Benefits Act is not reasonable, or that this interpretation has been misapplied in his case. For these reasons, the decision of the Court of Federal Claims must be and is

*AFFIRMED.*