# United States Court of Appeals for the Federal Circuit

Revised: July 11, 2007

2006-5141

CHRISTINE WELLS GROFF
and MICHAEL WELLS,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant.

------------------------------------------------------------

2007-5006

LAURIE H. LABARE
(on behalf of herself and all others similarly situated),

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Peter Gray, Rider Bennett, LLP, of Minneapolis, Minnesota, argued for plaintiff-appellee in appeal 2006-5141. On the brief were Eric J. Magnuson, and Steven M. Sitek.

Timothy P. McIlmail, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant in appeal 2006-5141. With him on the brief were Peter D. Keisler, Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel were Rafael A. Madan, General Counsel, Victoria O'Brien, and Jason P. Cooley, Attorney Advisors, Office of General Counsel, Office of Justice Programs, United States Department of Justice, of Washington, DC.

Peter Gray, Rider Bennett, LLP, of Minneapolis, Minnesota, argued for plaintiff-appellant in appeal 2007-5006.  On the brief was Joseph S. Lawder.

Timothy P. McIlmail, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee in appeal 2007-5006.  With him on the brief were Peter D. Keisler, Assistant Attorney General, and Jeanne E. Davidson, Director.  Of counsel on the brief were Rafael A. Madan, General Counsel, Victoria O'Brien and Jason P. Cooley, Attorney Advisors, Office of General Counsel, Office of Justice Programs, United States Department of Justice, of Washington, DC.

Appealed from:  United States Court of Federal Claims

Judge Lynn J. Bush
Judge Marian Blank Horn

# United States Court of Appeals for the Federal Circuit

2006-5141

CHRISTINE WELLS GROFF
and MICHAEL WELLS,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant.

_____

2007-5006

LAURIE H. LABARE
(on behalf of herself and all others similarly situated),

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  July 3, 2007
_____

Before MAYER, BRYSON, and PROST, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

The Public Safety Officers' Benefits Act ("PSOBA"), 42 U.S.C. § 3796 et seq., provides benefits to the relatives of public safety officers who are killed as the result of injuries sustained in the line of duty. The statute also provides benefits to public safety officers who are permanently disabled, id. § 3796(b), and educational benefits to dependents of federal law enforcement officers who are killed or disabled in the line of duty, id. § 3796d.

Congress has assigned administration of the benefit program to the Bureau of Justice Assistance ("BJA"), an agency within the U.S. Department of Justice. Prospective beneficiaries submit claims to the BJA, and the BJA determines, under regulations issued pursuant to statute, whether the decedent was a public safety officer who died under circumstances that entitle the beneficiaries to an award under the statute. 42 U.S.C. § 3796(a). Judicial review of the BJA's decisions is available in the Court of Federal Claims. Demutiis v. United States, 291 F.3d 1373, 1376 (Fed. Cir. 2002).

This is a consolidated appeal from two decisions of the Court of Federal Claims, Groff v. United States, 72 Fed. Cl. 68 (2006), and LaBare v. United States, 72 Fed. Cl. 111 (2006). The two cases both involve challenges to BJA determinations denying death benefits to the relatives of pilots who were employed by private contractors and who died while rendering fire suppression assistance to public agencies. The BJA denied the claims for benefits. The BJA ruled that neither of the pilots was a "public safety officer" within the meaning of PSOBA, because both were employees of private companies and therefore were not "serving a public agency in an official capacity" at the time of their deaths. See 42 U.S.C. § 3796b(9)(A).

2006-5141
2007-5006
2

The Court of Federal Claims in the <u>Groff</u> case overturned the BJA's decision denying benefits, while the court in the <u>LaBare</u> case upheld the BJA's decision denying benefits. We hold that the BJA's decision should have been sustained in both cases. We therefore reverse the judgment in <u>Groff</u> and affirm the judgment in <u>LaBare</u>.

I

A

Lawrence Groff was employed as a helicopter pilot by San Joaquin Helicopters, a private company based in California. San Joaquin Helicopters entered into a contract with the California Department of Forestry and Fire Protection to provide piloting services for fire suppression missions. The contract provided that the company's employees "shall act in an independent capacity and not as officers or employees or agents of the State of California," that the company would indemnify California and maintain liability insurance for activities performed pursuant to the contract, and that the company would pay and provide benefits for the pilots who performed services under the contract. The aviation procedures handbook of the California Department of Forestry and Fire Protection states that "[c]ontractors must understand that they are acting in an independent capacity in the performance of their service, and not as an officer, employee, or agent of the state."

While piloting a helicopter pursuant to the contract, Mr. Groff died as a result of a mid-air collision with another aircraft. Following his death, Mr. Groff's wife and stepson, Christine Wells Groff and Michael Wells, applied for PSOBA benefits. The BJA determined that, as the employee of a government contractor, Mr. Groff did not satisfy the PSOBA definition of "public safety officer," and it denied the claim. The claimants

then requested and obtained a hearing at two additional levels of administrative review within the BJA, but the claim was denied at both levels. The hearing examiner and the Director of the BJA both wrote lengthy opinions explaining the reasons for the denial. In essence, both concluded, based on a legal position the BJA had adhered to for more than 20 years, that the employee of a private contractor does not qualify as a "public safety officer" within the meaning of PSOBA.

The claimants then sought review of the BJA's decision in the Court of Federal Claims. The court held that the BJA's decision was erroneous and granted the claimants' motion for judgment on the administrative record, awarding them $250,000 in benefits.

The court noted that PSOBA defines a "public safety officer" as "an individual serving a public agency in an official capacity," 42 U.S.C. § 3796b(9)(A), and that in a 1981 policy directive, the BJA stated that in order "to be serving a public agency in an official capacity, one must be an officer, employee, volunteer, or [in a] similar relationship of performing services as part of a public agency," and that to have such a relationship with a public agency, "an individual must be officially recognized or designated as functionally within or a part of the public agency." Measuring Mr. Groff's service against that test, the court found that he was not an "employee" of the California Department of Forestry and Fire Protection, but that he was in a "similar relationship of performing services as part of" the California agency and that he was "officially recognized or designated as functionally within or a part of" that agency. Based on those findings and on the court's conclusion that the statute could not properly be construed to exclude all contract employees from coverage, the court held that the

claimants were entitled to benefits based on Mr. Groff's death. The court therefore entered judgment for the plaintiffs for the death benefits payable under the PSOBA statute. The government has taken an appeal from that decision.

B

Craig LaBare was a pilot employed by Hawkins & Powers Aviation, Inc., a private aviation service. Hawkins & Powers Aviation entered into a contract with the U.S. Forest Service to provide airtankers for the suppression of fires. Under the contract, the company was responsible for aircraft equipment, maintenance, safety, and flight crews. The contract also stated that the company was required to obtain liability insurance and would "be responsible for all damage to property and to persons."

While Mr. LaBare was piloting an airtanker pursuant to the contract, the wings of his aircraft detached, causing a fatal crash. Following his death, his wife Laurie LaBare filed a claim for PSOBA benefits. The BJA denied the claim, on the grounds that Mr. LaBare, as the employee of a government contractor, was not a "public safety officer" serving a public agency "in an official capacity" within the meaning of PSOBA. Like the claimants in the Groff case, Ms. LaBare obtained a hearing and two levels of review within the BJA, but her claim was rejected, first by a hearing examiner and then by the Director of the BJA.

Ms. LaBare sought review in the Court of Federal Claims. The court, acting through a different judge from the one assigned to the Groff case, affirmed the BJA's decision.

The court in LaBare looked to whether the decision of the BJA denying Ms. LaBare's claim was supported by substantial evidence. The court noted that the BJA

defined the term "public safety officer" in PSOBA to exclude employees of private companies, even if they were killed while working with public agencies and engaged in fire suppression.

The court observed that PSOBA did not define what it means to be "serving a public agency in an official capacity." Relying on this court's decision in Chacon v. United States, 48 F.3d 508 (Fed. Cir. 1995), the trial court held that the BJA's interpretation of the statute, as expressed in prior decisions of the agency and summarized in a BJA publication, is entitled to deference under the principles of Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Under the BJA's interpretation of the statute, in order to qualify as a "public safety officer" the individual in question must be an "officer, employee, volunteer, or similar relationship of performing services as a part of a public agency" and must be "officially recognized or designated as functionally within or a part of the public agency." In this case, the court concluded, substantial evidence supported the BJA's conclusion that Mr. LaBare, as an employee of a private contractor, was never officially recognized as a government employee or acknowledged as "functionally" a part of the Forest Service. The court therefore denied Ms. LaBare's claim for PSOBA benefits. Ms. LaBare has appealed from that decision.

II

A

PSOBA provides that in any case in which the BJA "determines, under regulations issued pursuant to [the statute], that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the [BJA]

shall pay a benefit of $250,000." 42 U.S.C. § 3796(a).  PSOBA further provides that the BJA "is authorized to establish such rules, regulations, and procedures as may be necessary to carry out the purposes of [the statute]" and that those rules, regulations, and procedures "will be determinative of conflict of laws issues arising under [the statute]." Id. § 3796c.

Pursuant to that statutory authority, the BJA has promulgated regulations implementing the statute.  The procedural regulations set up a mechanism for claimants to submit claims to the BJA and provide that claimants are entitled to representation in prosecuting their claims.  28 C.F.R. § 32.22(a) (2006).[1]  The regulations prescribe a three-stage process for adjudicating claims.  First, following the claimant's submission of a claim and any evidence pertinent to the claim, the BJA makes a finding as to the proper disposition of the claim.  Id. § 32.23.  If the finding is one of ineligibility, the BJA is required to make findings of fact and conclusions of law supporting the decision.  Id.

After notice of the BJA's finding of ineligibility, the claimant is entitled to ask the BJA for reconsideration.  As part of the reconsideration proceeding, the claimant is entitled to a hearing before a hearing officer at which the claimant may introduce evidence.  28 C.F.R. § 32.24 (2006).  Although the hearing is not governed by formal rules of procedure, the hearing officer is required to conduct the hearing "in such manner as to best ascertain the rights of the claimant" and is required to "receive such

---

[1]    In August 2006, BJA promulgated new regulations that made some changes in the procedures for administrative review of PSOBA claims.  See 71 Fed. Reg. 46,028 (Aug. 10, 2006).  Those regulations were not in effect at the time that the agency decided these cases.  We cite to the former version of the procedural regulations in this opinion, not the version of the regulations incorporating the August 2006 changes.

relevant evidence as may be introduced by the claimant and shall, in addition, receive such other evidence as the hearing officer may determine to be necessary or useful in evaluating the claim." The hearing is required to be recorded and a transcript prepared. Id. § 32.24(c). Following the hearing, the hearing officer is required to make a determination of eligibility, setting forth the findings of fact and conclusions of law supporting the hearing officer's determination. Id. § 32.24(g).

Following that determination, the claimant may request that the Director of the BJA review the record and the hearing officer's determination; the Director may also conduct such a review on his or her own motion. At that point, the claimant may comment on the record and offer new evidence or argument. The Director is then required to make a final determination of eligibility, setting forth the findings of fact and conclusions of law supporting the Director's determination. 28 C.F.R. § 32.24(h), (i).

As noted, the agency's final decision is subject to judicial review in the Court of Federal Claims and then in this court. The courts' review of the BJA's denial of a claim for death benefits is limited to three inquiries: (1) whether there has been substantial compliance with the statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim. Amber-Messick v. United States, 483 F.3d 1316, 1321 (Fed Cir. 2007); Chacon, 48 F.3d at 511. In the present cases, our review focuses on the first issue—whether the BJA complied with the statutory requirements and the governing regulations in denying the claims. In particular, we must assess whether the BJA acted lawfully when it determined that neither Mr. Groff nor Mr. LaBare was a

"public safety officer" within the meaning of PSOBA and therefore that the claimants were not entitled to the statutory benefits.

B

The government asserts that we are obligated to apply the standard of deference articulated in <u>Chevron</u> to the BJA's determination that a privately employed pilot under contract to render fire suppression assistance to a public agency is not a "public safety officer" within the meaning of PSOBA.

The <u>Chevron</u> doctrine of judicial deference to an administrative agency's interpretation of a statute is based on the observation that "the power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." <u>Chevron</u>, 467 U.S. at 843, <u>quoting</u> <u>Morton v. Ruiz</u>, 415 U.S. 199, 231 (1974). As the Supreme Court stated recently, "When an agency fills such a 'gap' reasonably, and in accordance with other applicable (<u>e.g.</u>, procedural) requirements, the courts accept the result as legally binding." <u>Long Island Care at Home, Ltd. v. Coke</u>, No. 06-593, slip op. at 4 (U.S. June 11, 2007). In <u>United States v. Mead Corp.</u>, the Supreme Court explained that

> administrative implementation of a particular statutory provision qualifies for <u>Chevron</u> deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent.

533 U.S. 218, 226-27 (2001). The core issue in deciding whether <u>Chevron</u> deference is warranted is whether "Congress meant to delegate to the agency the authority to make determinations having the force of law." <u>Cathedral Candle Co. v. Int'l Trade Comm'n</u>, 400 F.3d 1352, 1361 (Fed. Cir. 2005); <u>see also</u> <u>Long Island Care at Home</u>, slip op. at 13; <u>Mead</u>, 533 U.S. at 226-27; <u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000). In <u>Mead</u>, the Court explained that its cases had recognized that a very good indicator of congressional intent to delegate lawmaking authority and trigger <u>Chevron</u> deference could be found in "express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." 533 U.S. at 229.

In PSOBA, Congress expressly authorized the BJA to "determine[], under regulations issued pursuant to [the Act], that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty," 42 U.S.C. § 3796(a), and to "establish such rules, regulations, and procedures as may be necessary to carry out the purposes of [the Act]," <u>id.</u> § 3796c(a). We have previously concluded that Congress's grant of that authority to the BJA reflects Congress's expectation that the BJA would "be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law," <u>Mead</u>, 533 U.S. at 229, and that the BJA's interpretations of the statutory terms accordingly should receive <u>Chevron</u> deference. <u>Amber-Messick</u>, 483 F.3d at 1323; <u>Chacon</u>, 48 F.3d at 512.

The claimants attempt to distinguish <u>Amber-Messick</u> on the grounds that the dispute in that case turned on the interpretation of a regulation promulgated through

2006-5141                                              10
2007-5006

traditional notice-and-comment rulemaking, and that the claimant did not challenge the applicability of Chevron. They distinguish Chacon on the ground that it was decided before the Supreme Court interpreted Chevron restrictively in Mead and Christensen. Those distinctions are unavailing. Amber-Messick and Chacon are consistent with the principles of Mead and Christensen. While Christensen held that the procedural safeguards of notice-and-comment rulemaking are sufficient to establish that Chevron deference is appropriate, the Supreme Court in later cases has made clear that Chevron deference is not limited to formally promulgated regulations. See Barnhart v. Walton, 535 U.S. 212, 221-22 (2002); Mead, 533 U.S. at 230-31. Moreover, the BJA interpretation of PSOBA that was at issue in Amber-Messick—the BJA's ruling that the statute's definition of "firefighter" did not include a fourteen-year-old "apprentice firefighter" who was prohibited from actively engaging in the suppression of fires—was announced for the first time not through notice-and-comment rulemaking but in the adjudication of Ms. Amber-Messick's claim. In this case, we make explicit what was implicit in our prior decisions in Chacon and Amber-Messick: that Congress intended for the BJA's statutory interpretations announced through adjudication to have the force of law, and that those interpretations are therefore entitled to deference under Chevron.[2]

---

[2]    We do not rest our decision to apply the Chevron doctrine in this case on the BJA's regulations or its interpretation of its regulations. To be sure, the BJA had a regulation in effect at the time of the administrative proceedings in these cases that defined the term "public safety officer" in terms that tracked the statutory language. See 28 C.F.R. § 32.2(j) (2002) ("Public safety officer means any individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, firefighter, rescue squad member or ambulance crew member."). While an agency's interpretation of its own regulation is normally entitled to substantial deference, Auer v. Robbins, 519 U.S. 452, 461-63 (1997), the Auer standard does not apply when

Our conclusion in this regard is consistent with the analysis in <u>Pesquera Mares</u> <u>Australes Ltda. v. United States</u>, 266 F.3d 1372 (Fed. Cir. 2001), a post-<u>Mead</u> case in which we held that <u>Chevron</u> deference is due to the Department of Commerce's interpretation of ambiguous statutory terms articulated in the course of administrative antidumping determinations. In <u>Pesquera</u>, we held that an administrative antidumping proceeding is the kind of "relatively formal administrative procedure" that the Supreme Court in <u>Mead</u> characterized as qualifying for <u>Chevron</u> deference. 266 F.3d at 1380. In particular, the <u>Pesquera</u> court noted that Commerce's antidumping proceedings were relatively formal, that Congress delegated authority to Commerce to review and determine the amount of any antidumping duty, that the proceeding before Commerce

---

the regulation "does little more than restate the terms of the statute itself." <u>Gonzales v.</u> <u>Oregon</u>, 546 U.S. 243, 257 (2006). "[T]he existence of a parroting regulation does not change the fact that the question . . . is not the meaning of the regulation but the meaning of the statute." <u>Id.</u> For that reason, we do not base our decision on the fact that the BJA promulgated such a "parroting" regulation and interpreted it to exclude contract employees.

We also do not rest our decision on the revised version of the BJA's regulations, adopted in August 2006, which provide more detailed guidance as to the meaning of the statutory term "public safety officer." The revised regulation, 28 C.F.R. § 32.3 (effective Sept. 11, 2006), reflects the BJA's earlier adjudicative determinations and makes clear that contract employees such as Mr. Groff and Mr. LaBare would not be regarded as public safety officers within the meaning of the statute. However, the government did not argue that the new regulation could serve as a basis for upholding the BJA's determinations in these cases, and at oral argument the government expressly declined to rely on the new regulation. Accordingly, we do not rely on that regulation as the basis for our decision, although we note that the Supreme Court has held that legal positions taken in properly promulgated regulations are entitled to <u>Chevron</u> deference even if the regulations are promulgated after the administrative decision in question, and indeed even if they are promulgated in response to the very litigation that is under review. <u>See</u> <u>Smiley v. Citibank (S.D.), N.A.</u>, 517 U.S. 735, 740-41 (1996); <u>United States v. Morton</u>, 467 U.S. 822, 836 n. 21 (1984).

2006-5141                                    12
2007-5006

was subject to judicial review based on the administrative record, and that Commerce considered its administrative determinations to be precedential.

Essentially the same factors are present with regard to administrative adjudications before the BJA. First, Congress has expressly delegated to the BJA the duty to determine, pursuant to PSOBA and the BJA's regulations, whether a public safety officer has died or become disabled as a result of a personal injury suffered in the line of duty and to make various adjustments in the benefit payments. The statute expressly authorized the BJA to issue regulations governing the representation of claimants in claims proceedings before the BJA; it authorized the BJA to use appropriated funds to conduct appeals of death and disability claims; it empowered the BJA to use administrative and investigative assistance from state and local agencies in making its determinations; and it provided that responsibility for making final determinations would rest with the BJA and that the BJA's rules, regulations, and procedures would be determinative of all conflicts of laws arising under the statute. 42 U.S.C. § 3796c. The statute thus contemplates the creation by regulation of an administrative process of some complexity, involving investigative actions, findings of fact, the determination and application of legal standards, the creation of administrative appeal proceedings, and the exercise of a degree of discretion as to adjustments and interim payments of benefits. Under these circumstances, it is reasonable to conclude that Congress contemplated that the BJA would use the process of adjudicating claims to make those legal determinations that would be necessary to fill gaps in the statutory standards. See INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999).

Second, as the statute appears to contemplate, the administrative procedure that the BJA has created for adjudicating PSOBA claims is relatively formal. As noted, the claimant has a right to pursue the claim through three administrative stages. The claimant has a right to representation throughout and has a right to a full evidentiary hearing before a hearing examiner at the second stage. At each stage the BJA is required to make written findings of fact and conclusions of law to explain its decision. The final stage is a proceeding before the Director of the BJA. Like the antidumping proceeding at issue in Pesquera, the adjudicative proceeding in PSOBA claim cases is formal and culminates in a formal written decision by the head of the agency, not a nonbinding disposition by a low-level agency official. See Mead, 533 U.S. at 233-34.

Third, as has been recognized for more than 20 years, the BJA's decisions on PSOBA benefit claims are subject to review in the Court of Federal Claims. Demutiis, 291 F.3d at 1376; Wydra v. Law Enforcement Assistance Admin., 722 F.2d 834, 837 (D.C. Cir. 1983). That review is conducted based on the administrative record. See, e.g., Yanco v. United States, 258 F.3d 1356, 1362 (Fed. Cir. 2001); Chacon, 48 F.3d at 511.

Fourth, the BJA treats at least some of its decisions on issues arising under the statute as creating precedents that govern later decisions in similar cases. This is such an instance, as the BJA's decision in this case is predicated on a 1980 administrative decision in which the BJA's predecessor agency denied a claim by the survivor of a contract pilot who died while engaged in firefighting in support of a federal agency. The 1980 decision, moreover, is codified along with other administrative determinations in a BJA document entitled Legal Interpretations of the Public Safety Officers' Benefits Act,

which the BJA relies on and which has been cited as precedent by this court. See Chacon, 48 F.3d at 512. The administrative record thus reflects that the BJA's position with respect to contract employees is one of longstanding duration and that the agency has given the question "careful consideration . . . over a long period of time," which supports the conclusion that "Chevron provides the appropriate legal lens through which to view the legality of the Agency interpretation here at issue." Barnhart, 535 U.S. at 222. In sum, based on the Supreme Court's decisions in Mead and Barnhart, this court's decisions in Chacon and Amber-Messick, and the analysis of this court in an analogous setting in Pesquera, we hold that the adjudicative determinations that Congress contemplated that the BJA would conduct are sufficiently formal to be entitled to Chevron deference.

C

Our inquiry under the Chevron standard is twofold. First, we must determine "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

The precise issue in this case is whether the term "public safety officer" as used in the statute includes privately employed pilots such as Mr. LaBare and Mr. Groff who render fire suppression assistance pursuant to contracts between their employers and public agencies. The Act defines "public safety officer" as "an individual serving a public

agency in an official capacity, with or without compensation, as a law enforcement officer, as a firefighter, as a chaplain, or as a member of a rescue squad or ambulance crew." 42 U.S.C. § 3796b(9)(A). Congress did not further define what it means to serve "in an official capacity," leaving the statute silent as to whether contract pilots fall within its ambit.

The BJA, however, has addressed the question several times since the enactment of the statute. The issue appears to have first arisen in the 1980 case referenced above, which involved a claim filed by the widow of a contract pilot, Mr. Holstine, who died while participating in California Department of Forestry firefighting operations. The BJA's predecessor agency construed the term "public safety officer" using the following language:

> In order to be serving a public agency in an official capacity one must be an officer, employee, volunteer, or similar relationship of performing services as part of a public agency. To have such a relationship with a public agency, an individual must be officially recognized or designated as functionally within or a part of the public agency.

U.S. Department of Justice, Office of Justice Assistance, Research, and Statistics, Legal Interpretations of the Public Safety Officers' Benefits Act 9 (1981) (reprinting the Holstine decision). The LEAA concluded that the pilot, by virtue of being the employee of a government contractor, did not have such a relationship to the agency. In resolving the claims at issue in the Groff and LaBare cases, the BJA followed that precedent and again concluded that contract pilots rendering fire suppression assistance to public agencies are not serving in an official capacity within the meaning of PSOBA.

We hold that the BJA's interpretation is a permissible construction of the statute. As we observed in Amber-Messick, the drafters of PSOBA were concerned with

ensuring that both volunteer and public employee firefighters were included within the scope of the Act. See Amber-Messick, 483 F.3d at 1324. It was reasonable for the BJA to conclude that Congress intended for the phrase "in an official capacity" to capture those groups while excluding privately employed individuals. Moreover, the legislative history confirms that this is, at a minimum, a plausible interpretation of the statute. The Act's sponsor in the House of Representatives, Representative Eilberg, stated that the bill would not apply to "privately employed safety and security officers," both as a general matter and in the particular scenario in which those officers "were called by a local arm of the government or the local police organization to assist in any way." 122 Cong. Rec. 12,002, 12,009 (1976).[3] The Supreme Court has cautioned that "[t]he remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history," Chrysler Corp. v. Brown, 441 U.S. 281, 311 (1979), and we do not suggest that the quoted remark is conclusive evidence of the statute's scope. Nevertheless, it is difficult to reconcile Representative Eilberg's statement with the claimants' assertion that the congressional intent to include privately employed individuals within PSOBA's coverage is so clear as to make the BJA's interpretation unsustainable under Chevron. At a minimum, the legislative history reinforces the notion that the statutory text is open to the interpretation adopted by the BJA in its adjudicative determinations.

---

[3]    Representative Eilberg's statement was made during the debate on a version of the bill that applied only to law enforcement officers, before it was merged with a companion bill covering firefighters. The statement is nevertheless informative, because the bill at that time contained the relevant "in an official capacity" language. See 122 Cong. Rec. 12,002, 12,013 (1976).

The claimants suggest that the issue in these cases should be characterized as whether Congress manifested an intent to exclude contract firefighters, rather than an intent to include them within PSOBA's coverage. Such a semantic distinction, however, does not alter the analysis. Absent some indication otherwise, "Congress' silence is just that—silence." Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 749 (1989), quoting Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 686 (1987). Here, Congress has expressed neither an unambiguous intention to include nor an unambiguous intention to exclude the employees of contractors from the Act's coverage. Because the statute is silent on that issue, and because the BJA's interpretation is reasonable, we must defer to the agency's construction of the statute.

III

The claimants further contend that in denying the claims in these cases the BJA has misapplied its own criteria for awarding benefits. Even accepting as reasonable the BJA's definition of serving "in an official capacity," as first articulated in Holstine, see Chacon, 48 F.3d at 512, the claimants argue that Mr. LaBare and Mr. Groff were each "officially recognized or designated as functionally within or a part of" public agencies, as those terms were used in Holstine. We disagree.

The claimants cite several facts in support of their argument. In Mr. LaBare's case, his piloting activity was governed by numerous federal regulations and guidelines that provide protocols for missions and base operations. Contract pilots required Forest Service approval and were obligated to comply with the same Forest Service guidelines applicable to government pilots. And after Mr. LaBare's death, the Forest Service submitted a report to the BJA that listed the Forest Service as Mr. LaBare's employer.

Similarly, Mr. Groff was subject to pre-approval by the California Department of Forestry and Fire Protection, and he operated under the auspices of both state and federal regulations as well. After Mr. Groff's death, the California agency issued an opinion in which it stated that he was an officially recognized member of that agency.

The undisputed facts, however, show that both Mr. LaBare and Mr. Groff were hired, paid, and subject to termination by their private employers. The contract between the California agency and San Joaquin Helicopters required the company to maintain liability insurance for its activities and stated that contract pilots such as Mr. Groff "shall act in an independent capacity and not as officers or employees or agents of the State of California." Similarly, the contract between Hawkins & Powers Aviation and the Forest Service required the company to obtain liability insurance and maintain responsibility for "all damage to property and to persons." The BJA reasonably concluded that neither the government regulation and oversight nor the post-mortem statements of the Forest Service and the California Department of Forestry and Fire Protection transformed Mr. LaBare and Mr. Groff from contract pilots into government employees.

Moreover, the Holstine definition was an explicit restatement of the conclusion that privately employed contract pilots did not serve public agencies "in an official capacity." It does not give due respect to the administrative interpretation of the statute to say that the rule formulated by the agency does not apply to the very fact pattern for which the rule was designed. The BJA consistently applied its own rule when it concluded that, as employees of government contractors, Mr. LaBare and Mr. Groff were not public safety officers within the meaning of PSOBA. To uphold the BJA's legal

interpretation of the PSOBA statute means that contract pilots cannot be treated as "serving a public agency in an official capacity."

For the foregoing reasons, the judgment in <u>Groff</u> is reversed and the judgment in <u>LaBare</u> is affirmed.

Each party shall bear its own costs for these appeals.

<u>No. 2006-5141, REVERSED.</u>

<u>No. 2007-5006, AFFIRMED.</u>

2006-5141
2007-5006
20