# United States Court of Appeals for the Federal Circuit

---

**CATHY MOORE, RICHARD MOORE, KIM CARLSON, TIFFANY ADKINS, DALE RANSDELL, CAROL RANSDELL, KOLBY JAMES, TORI RUIZ, GLEN GIBSON, MARY GIBSON, BRIAN HENGEL, AND JUDY HENGEL,**
*Petitioners,*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent.*

---

2013-8001

---

Petition for review of a decision of the Bureau of Justice Assistance in PSOB Claim Nos. 2004-225, 2004-226, 2004-227, 2004-228, 2004-229, 2004-230, 2004-231, 2004-232.

---

Decided: July 25, 2014

---

DENISE M. CLARK, Clark Law Group, PLLC, of Washington, DC, for petitioners.

TARA K. HOGAN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were STUART F. DELERY, Assistant Attor-

ney General, B<small>RYANT</small> G. S<small>NEE</small>, Acting Director, and S<small>COTT</small>
D. A<small>USTIN</small>, Assistant Director. Of counsel on the brief
were R<small>AFAEL</small> A. M<small>ADAN</small>, General Counsel, R<small>OSEMARY</small>
C<small>ARRADINI</small>, Deputy General Counsel, and J<small>ASON</small> C<small>OOLEY</small>,
Senior Litigation Counsel, Office of the General Counsel,
Office of Justice Programs, United States Department of
Justice, of Washington, DC.

———————————

Before N<small>EWMAN</small>, D<small>YK</small>, and R<small>EYNA</small>, *Circuit Judges.*

D<small>YK</small>, *Circuit Judge.*

Petitioners are survivors of eight firefighters who died
in 2003. They seek survivors' benefits under the Public
Safety Officers' Benefits Act ("Benefits Act"),
42 U.S.C. § 3796 *et seq.* The Public Safety Officers' Bene-
fits Office ("Benefits Office") denied the claims, and peti-
tioners filed requests for redetermination by the Director
of the Bureau of Justice Assistance ("BJA"), which also
denied the claims. Petitioners seek review of the BJA's
decision. The BJA did not err in concluding that the
firefighters were not public safety officers within the
meaning of the Benefits Act.

## BACKGROUND

The Benefits Act authorizes the BJA to pay a mone-
tary benefit to certain surviving relatives of a "public
safety officer" who has died because of an injury sustained
in the line of duty. 42 U.S.C. § 3796(a). The category of
"public safety officer" includes "an individual serving a
public agency in an official capacity, with or without
compensation, as a law enforcement officer, as a firefight-
er, or as a chaplain." *Id.* § 3796b(9)(A). The question is
whether the decedents were "firefighters" within the
"public safety officer" category. In order to fall within that
category, an individual must be "serving a public agency
in an official capacity . . . as a firefighter." *Id.* Public
agencies       include       federal       and       state       agencies.

*Id*. § 3796b(8). Before the BJA, the petitioners claimed that the decedents were employed by the State of Oregon. Here, they contend that the decedents were serving the United States Forest Service ("Forest Service") in an official capacity.

In October 1998, a number of state and federal governmental entities, including the state of Oregon's Department of Forestry ("Oregon") and the Forest Service, entered into the Master Cooperative Fire Protection Agreement ("Master Agreement"). The Master Agreement was designed to enable the signatories to "coordinate efforts for the prevention, detection, and suppression of wildfires." Pet'r's App. ("P.A.") 557. In 2003, Oregon invited bids from contractors to provide "one or more twenty (20)-person . . . wildfire firefighting Crews for initial attack, suppression, mop-up, and Severity Assignments within the States of Oregon and Washington and elsewhere." P.A. 173. Oregon accepted the bid submitted by First Strike Environmental ("First Strike") for the 2003 fire season. First Strike is a private company that works with governmental and private entities to help suppress wildfires.

The Interagency Crew Agreement ("Crew Agreement") between Oregon and First Strike stated that "[t]he service(s) rendered by [First Strike] under this Agreement are those of an independent contractor. [First Strike] is not an officer, employee or agent of the State . . . ." P.A. 179. The Crew Agreement also provided that other signatories to the Master Agreement, including the Forest Service, could request personnel, supplies, or equipment from First Strike.

On August 12, 2003, the Forest Service asked First Strike to send a crew to a fire in the Boise National Forest. First Strike dispatched a 20-person crew, including its employees Richard Moore, David K. Hammer, Leland Price, Mark Ransdell, Jesse James, Ricardo Ruiz, Paul

Gibson, and Jeff Hengel (collectively, the "decedents") and the crew boss, Justin Krueger. The First Strike crew worked there for nearly two weeks. During that time, the Forest Service supervisor, Rick Martin, communicated orders only to the First Strike crew boss. The Forest Service supervisor transmitted orders via handheld radio, but was not on-site with the First Strike crew and did not direct the activities of individual crew members. Instead, the First Strike crew boss directed and supervised the individual crew members' activities. At some points, the First Strike crew worked alongside "Hot Shot" crews made up of Forest Service employees. After nearly two weeks of work, the crew was demobilized on August 24, 2003. While the eight decedents were returning home, the van carrying them collided with a tractor trailer, and all eight died.

Petitioners, the decedents' survivors, filed claims pursuant to the Benefits Act. The Benefits Office denied the claims. The petitioners sought redeterminations from the BJA, which upheld the denial of each of the claims on the ground that "[c]laimants have failed to establish that the decedent was serving a public agency in an official capacity and, therefore, have failed to establish that he was a public safety officer under the [Benefits] Act." P.A. 10. The BJA explained the decedents could not qualify because they were employees of First Strike, a private company, and First Strike was an independent contractor of Oregon. First Strike's employees therefore "could not be understood to be serving [Oregon] in an official capacity under the [Benefits] Act and regulations." P.A. 9 (citing 42 U.S.C. § 3796b(8); 28 C.F.R. § 32.3). The BJA emphasized that its determination was not meant to detract from "the great value of the decedent's service to his community and to other communities that he helped, or the tremendous loss borne by the Claimants." P.A. 10.

Petitioners sought review of the BJA's final determination in this court. We have jurisdiction pursuant to 42

U.S.C. § 3796c-2. *Juneau v. Dep't of Justice*, 583 F.3d 777, 780 (Fed. Cir. 2009).

## DISCUSSION

We review the BJA's decision to deny claims under the Benefits Act to determine "'(1) whether there has been substantial compliance with statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim.'" *Id.* (quoting *Amber-Messick v. United States*, 483 F.3d 1316, 1321 (Fed. Cir. 2007)); *see also Groff v. United States*, 493 F.3d 1343, 1349 (Fed. Cir. 2007); *Chacon v. United States*, 48 F.3d 508, 511 (Fed. Cir. 1995). Here, we must decide whether the BJA complied with the Benefits Act and its own regulations in determining that the decedents did not qualify as "public safety officers" because they were formally employed by a private company that had an independent contractual relationship with the government.

The Benefits Act provides that "[i]n any case in which the [BJA] determines, under regulations issued pursuant to this subchapter, that a *public safety officer* has died as the direct and proximate result of a personal injury sustained in the line of duty, the [BJA] shall pay a benefit" to the officer's surviving relatives. 42 U.S.C. § 3796(a) (emphasis added). As defined by the statute, a "public safety officer" is "an individual *serving a public agency in an official capacity*, with or without compensation, as a law enforcement officer, as a firefighter, or as a chaplain." *Id.* § 3796b(9)(A) (emphasis added).[1] A "'firefighter' in-

---

[1]     The full text of § 3796b(9) reads:

(9) "public safety officer" means—

(A) an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, as a firefighter, or as a chaplain;

(B) an employee of the Federal Emergency Management Agency who is performing official duties of the Agency in an area, if those official duties—

(i) are related to a major disaster or emergency that has been, or is later, declared to exist with respect to the area under the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5121 *et seq*.); and

(ii) are determined by the Administrator of the Federal Emergency Management Agency to be hazardous duties;

(C) an employee of a State, local, or tribal emergency management or civil defense agency who is performing official duties in cooperation with the Federal Emergency Management Agency in an area, if those official duties—

(i) are related to a major disaster or emergency that has been, or is later, declared to exist with respect to the area under the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5121 *et seq*.); and

(ii) are determined by the head of the agency to be hazardous duties; or

(D) a member of a rescue squad or ambulance crew who, as authorized or licensed by law and by the applicable agency or entity, is engaging in rescue activity or in the provision of emergency medical services.

cludes an individual serving as an officially recognized or designated member of a legally organized volunteer fire department." *Id.* § 3796b(4). The statute does not otherwise define the term "firefighter" or the phrase "in an official capacity," but authorizes the BJA "to establish such rules, regulations, and procedures as may be necessary to carry out the purposes of this subchapter." 42 U.S.C. § 3796c(a).

We have previously held that Congress intended that BJA pronouncements interpreting the Benefits Act would have the force of law, and therefore that we must defer to the BJA's interpretation of the statute as long as it is reasonable, in accordance with *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *Amber-Messick*, 483 F.3d at 1323–25 (upholding the BJA's interpretation of "public safety officer" to exclude minor apprentices not authorized to engage directly in firefighting activity); *see also Chacon*, 48 F.3d at 512 (upholding BJA's interpretation of "public safety officer" to exclude prison inmates serving on firefighting detail). We have established that *Chevron* deference applies equally to the "BJA's statutory interpretations announced through adjudication." *Groff*, 493 F.3d at 1350.

We addressed the independent contractor issue in *Groff*. There, the BJA had denied Benefits Act claims brought by survivors of pilots who died while providing aerial fire suppression services. *Id.* at 1346. The pilots were employees of private companies that had independently contracted with state and federal government agencies. *Id.* The BJA concluded that "the employee of a private contractor does not qualify as a 'public safety officer' within the meaning of [the Benefits Act]." *Id.*

42 U.S.C. § 3796b(9).

at 1346. On review, we recognized that the statute did not directly address the status of employees of independent contractors, but that the BJA's predecessor agency had previously addressed the question in adjudicatory rulings. *Id.* at 1353 (discussing Public Safety Officers' Benefits Determination re: Holstine, No. 78-338 (July 8, 1980), *aff'd without published op.*, *Holstine v. Dep't of Justice*, No. 80-7477, 688 F.2d 846 (9th Cir. 1982) (unpublished table decision)). Under that interpretation:

> "In order to be serving a public agency in an official capacity one must be an officer, employee, volunteer, or similar relationship of performing services as part of a public agency. To have such a relationship with a public agency, an individual must be officially recognized or designated as functionally within or a part of the public agency."

*Id.* (quoting U.S. Dep't of Justice, Office of Justice Assistance, Research, and Statistics, *Legal Interpretations of the Public Safety Officers' Benefits Act* 9 (1981) (reprinting *Holstine* decision)). We concluded that the BJA's interpretation was permissible and entitled to *Chevron* deference because the statute was silent, the legislative history supported the BJA's interpretation, and the BJA's interpretation was reasonable. *Id.* at 1353–54. Here, as in *Groff*, "we must defer to the agency's construction of the statute." *Id.* at 1354.[2]

---

[2] The government relies on a regulation under 28 C.F.R. § 32.3 promulgated in 2006, after the 2003 accident involving the decedents. The regulation states: "Employee does not include—(1) Any independent contractor;" and "No individual shall be understood to be functionally within or part of a public agency solely by virtue of an independent contractor relationship." 28 C.F.R. § 32.3. While not directly applicable here, that regulation is

The facts in *Groff* were similar to those here. In *Groff*, the contract pilots were formally employed by private companies that had independently contracted with public agencies. *Id.* at 1356. At the time of their deaths, the pilots were performing operations pursuant their employers' public agency contracts. *Id.* at 1346, 1347. Under the terms of those contracts, the companies and their employees were independent contractors, not officers, employees, or agents of the government. *Id.* at 1355. Although the relevant agencies pre-approved the contract pilots, required compliance with state and federal regulations, and described the pilots as agency personnel after their deaths, the pilots were formally employed by the private independent contractors that hired them, paid them, and could terminate their employment. *Id.* at 1354–1355.

*Groff* squarely governs this case. Like the pilots in *Groff*, the decedents here were formally employed by a private company that had independently contracted to provide fire suppression services to public agencies. Petitioners admit that First Strike independently agreed to provide firefighting crews to the state and other government agencies for a fee, and under that agreement, First Strike's services were "those of an independent contractor . . . not an officer, employee or agent of the State." P.A. 179.[3]

---

consistent with the BJA's longstanding position that individuals who are employed by a company that has its own contractual relationship with the government are not public safety officers under the Benefits Act. *See Groff*, 493 F.3d at 1350 n.2. As we held in *Groff*, the BJA's adjudicatory rulings are entitled to *Chevron* deference. *Id.* at 1350.

[3] Petitioners attempt to distinguish *Groff* by arguing that the Benefits Act specifically references firefighters, not pilots. This is not a meaningful distinction. The

Petitioners argue that even if First Strike formally employed the decedents, the government was also their employer. Petitioners cite as an example 29 C.F.R. § 791.2, which pertains to joint employment under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. The FLSA's definition does not control the definition of a "public safety officer" under the Benefits Act. Different statutes define employment relationships differently. *See, e.g.*, *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947) (common law definition of "employee" does not control for the purposes of the FLSA, which "contains its own definitions, comprehensive enough to require its application to many persons and working relationships" beyond the scope of common law categories (citing *United States v. Rosenwasser*, 323 U.S. 360, 362, 363 (1945))); *Logue v. United States*, 412 U.S. 521, 526 (1973) (under the Federal Tort Claims Act, "'[e]mployee of the government' includes officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation'" (quoting 28 U.S.C. § 2671)). Neither the definition of "employee" in the FLSA nor the definition in the Federal Tort Claims Act applies here. Rather, the Benefits Act is the governing statute, and it has defined a "public safety officer" as "an individual serving a public agency in an official capacity." 42 U.S.C. § 3796b(9)(A).

Our court's precedent has recognized that the BJA has interpreted the Benefits Act's definition of "public safety officer" as excluding individuals who provide fire-

---

court assumed that the pilots in *Groff* were firefighters because they were specifically involved in "rendering fire suppression assistance." *Groff*, 493 F.3d at 1353. It makes no difference that they did so from the air rather than the ground.

fighting services pursuant to formal employment relationships with private companies that have independent contractual relationships with government agencies. *Groff*, 493 F.3d. at 1353. We deferred to that interpretation. *Id.* 1354, 1355. Here, as in *Groff*, we must again defer to the BJA's interpretation, under which employees of independent contractors do not qualify as "public safety officers" for the purposes of the Benefits Act. Firefighters are public safety officers only if they are formally employed by a public agency, *i.e.*, officially recognized or designated as functionally within or part of the public agency they serve.

Even if the Benefits Act were read to adopt a common law standard, the evidence does not support a finding that the decedents here qualified as government employees under the common law definition. The common law term "employee" is "understood in light of the general common law of agency." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 740–41 (1989) (applying common-law of agency to the term "scope of employment" in the Copyright Act absent specific definition). Contemporary statutes use "employee" to refer to the common-law "servant." Restatement (Second) of Agency § 2, comment (d). The Restatement requires that the servant be employed to perform services for another who controls or has the right to control the servant's "physical conduct in the performance of the services." *Id.* § 220(1); *see also Logue*, 412 U.S. at 527, 530 (sheriff's employees were employees of an independent contractor because government personnel had no authority to control their activities); *Reid*, 490 U.S. at 751–53 (sculptor was an independent contractor because community organization did not supervise his activities, retained his services for only two months, and did not provide employee benefits).

Petitioners have made no showing that the government actively supervised individual First Strike personnel. While the agreement was in force, the Forest Service

dealt exclusively with First Strike supervisors when requesting a crew and determining what services the crew would provide. During the firefighting operation, a Forest Service supervisor communicated by handheld radio with the First Strike crew boss, but "was not on-site with the [First Strike] crew and thus could not direct the crew what tools to use, where to stage personnel or otherwise how to accomplish the goal. . . . The crew members actually took direction from and were supervised by [First Strike] directly." P.A. 884 (determination of BJA Hearing Officer). During a two or three day period, the First Strike crew worked alongside two "Hot Shot" crews of elite Forest Service-employed firefighters, but did not intermix with those crews while fighting the fire. First Strike's chain of command chart confirms that the supervision of individual crew members was the responsibility of the company's crew boss, not government personnel.

First Strike, not the Forest Service, had a formal employment relationship with the decedents. First Strike was exclusively responsible for obtaining workers' compensation and liability insurance for its employees, including the decedents in this case. The government paid First Strike for services rendered under its contract, and First Strike separately paid its employees for their work. The First Strike Employee Manual directs employees to submit timecards to and retrieve paychecks from the company's headquarters. First Strike is entitled to terminate its employees at any time for any reason not prohibited by law. By contrast, the Crew Agreement only permits the government to demobilize an individual crew member for a violation of the terms of the agreement. The Forest Service's inclusion of the First Strike crew in an organizational chart and assignment list and letters of condolence from government officials to the individual decedents does not show that they were employees of the

Forest Service. The decedents were not Forest Service employees under the common law definition.[4]

CONCLUSION

For the foregoing reasons, we affirm the BJA's decision denying petitioners' claims.[5]

**AFFIRMED**

COSTS

No costs.

---

[4]     Petitioners argue that the BJA utilized an erroneous preponderance burden of proof, and instead should have utilized the burden provided in the regulation at the time of the accident and when the claims were filed. 28 C.F.R. § 32.4 then provided that "[t]he [BJA] shall resolve any reasonable doubt arising from the circumstances of the officer's death or permanent and total disability in favor of payment of the death or disability benefit." 28 C.F.R. § 32.4 (2006). This regulation, however, concerns the question of whether the death was "the direct and proximate result of a personal injury sustained in the line of duty," 42 U.S.C. § 3796(a), not the threshold question of whether an individual qualifies as a public safety officer.

[5]     Petitioners cite contentions they made during the administrative proceeding before the BJA as if they were equivalent to established facts. This is improper.