NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RICHARD J. MALIN,**
*Petitioner*

v.

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2015-8001

---

Petition for review of a decision of the Bureau of Justice Assistance in PSOB Claim No. 2010-DIS-028.

---

Decided: August 6, 2015

---

RICHARD J. MALIN, Cairo, NY, pro se.

JOSHUA A. MANDLEBAUM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD; RAFAEL ALBERTO MADAN, JASON P. COOLEY, JOEL FEIL, Office of General Counsel, Office of Justice Programs, United States Department of Justice, Washington, DC.

---

Before REYNA, WALLACH, and HUGHES, *Circuit Judges.*

PER CURIAM

Richard Malin appeals the Board of Justice Assistance's final determination that he has not established that the deterioration of his medical condition was the "direct and proximate" result of alleged exposures to contaminants in the line of duty, as is required by the Public Safety Officer's Benefits Act. *See* 42 U.S.C. § 3796(b). Because substantial evidence supports the BJA's final determination, we *affirm*.

## BACKGROUND

Mr. Malin served as an environmental-conservation police officer for the New York State Department of Environmental Conservation from May 1977 to December 1996. His primary duties included investigating environmental crimes dealing with the illegal application of toxins and toxic wastes. In the fall of 1988, Mr. Malin was diagnosed with carcinoid tumors affecting his liver and small intestines. After taking leave to treat the tumors, Mr. Malin returned to work in early 1989.

In 1993, Mr. Malin was assigned to the Region 3 office in New Paltz, NY. The Region 3 office was built on land that had previously been used as an apple orchard and had allegedly been contaminated with pesticides. During this assignment, Mr. Malin worked at the Region 3 office between three and five days a week. By the fall of 1996, Mr. Malin's condition had worsened significantly. Mr. Malin testified that he began to experience shortness of breath, wheezing, diarrhea, and energy loss. According to Mr. Malin, his primary doctor, Dr. Richard Warner, informed him that he had developed seven tumors in his liver and small intestine. Following Dr. Warner's advice, Mr. Malin stopped working in December 1996. Mr. Malin's condition appears to have continued to deteriorate and, as of August 2014, he was experiencing a deep

venous thrombosis, a complication of his chemotherapy for his liver cancer.

Mr. Malin claims that his condition deteriorated as a result of his work at the Region 3 office. He cites a February 1997 memorandum from Ward B. Stone, the head of wildlife pathology for New York, stating that the New Paltz office grounds were "contaminated with arsenic, lead, and DDT [dichlorodiphenyl trichloroethane]" and that Mr. Malin "had many exposures to carcinogens when investigating chemical spills, visiting dumps containing chemicals, and while working in the orchards in the New Paltz area." In 2009, Mr. Stone sent Mr. Malin an email stating that Mr. Malin had "a potential to be exposed on a daily basis to toxins at the office as well as in the field."

The New York State Department of Health also inspected the New Paltz offices and issued a report in April 1995. That report found that the potential for employees to be exposed to lead, arsenic, and DDT at the Region 3 office was "low." The report explained that the property is generally covered by grass, and employees are not likely to come into contact with contaminants during "routine activities such as walking and picnicking on the grounds."

Shortly after the Department of Health's report was issued, the Director of Occupational Health and Safety, Jean C. Edouard, issued a memorandum concurring with the Department of Health's findings. Jean Edouard specifically questioned Mr. Stone's conclusions, stating that elevated levels of contaminants on the Region 3 grounds "cannot be related to any risk of occupational exposures because there is no evidence that these substances are actually present where employees might come into contact with them." In response to a request from Jean Edouard, the New York State Department of Labor, Public Employee Safety and Health Bureau took air and surface wipe samples for lead and DDT inside the Region 3 office. The resulting Contamination Report found that

the levels of these two contaminants did not rise above "the detection limits of the testing methodologies."[1]

In October 1997, Mr. Malin filed a claim for workers' compensation benefits before the Workers' Compensation Board of New York State. Two months later, Dr. Warner, wrote a letter stating that throughout Mr. Malin's career, Mr. Malin had "repeated exposures" to arsenic, lead, and DDT. He further stated that he felt that it was "logical to conclude that deterioration of [Mr. Malin's] condition has been accelerated by exposure to these toxic contaminants." During a deposition conducted as a part of the workers' compensation claim, Dr. Warner was asked, assuming that "tests . . . would indicate that there was arsenic and lead and DDT in the place in which [Mr. Malin] worked at least three days a week, seven to eight hours a day," could he render an opinion on whether this exposure contributed to the worsening of Mr. Malin's symptoms. Dr. Warner answered that "nobody can give you a definite answer" but that he could "give you an opinion, which is probably yes." Dr. Warner also opined that it was "possible" that Mr. Malin's condition worsened without additional exposure to contaminants, but that "it would have been a little bit unusual to abruptly do so over that period of time to the extent that he became debilitated." As a part of the workers' compensation proceeding, Dr. Justin Scheer also rendered a report, concluding that, because the cause of carcinoid tumors is unknown, "it is not possible, with any degree of certainty, to attribute [Mr. Malin's] cancer to toxic exposure at work." Nevertheless, the Board credited Dr. Warner's testimony and awarded Mr. Malin workers' compensation benefits.

---

[1]   The Contamination Report did not describe arsenic levels because the applicable occupational safety standards exempted arsenic exposure from pesticide applications.

In connection with a separate claim for benefits before the New York State and Local Retirement System, Dr. Jeffrey Perkins testified that, having reviewed records provided by the State, Mr. Malin had been exposed to contaminants. He further testified that he would be comfortable stating that Mr. Malin's occupation was "causally connected" to his development of carcinoid tumors. Based mainly on Dr. Perkins' testimony, Mr. Malin was awarded disability retirement benefits.

In December 2009, Mr. Malin filed a claim for disability benefits under the Public Safety Officer's Benefits (PSOB) Act with the Bureau of Justice Assistance (BJA). To evaluate Mr. Malin's claim, the BJA obtained a medical report from Dr. William Oetgen. Dr. Oetgen stated that the cause of carcinoid tumors is unknown and that Drs. Warner's and Perkins's assertions linking Mr. Malin's cancer with exposures to contaminants at the Region 3 office "represent speculation" that "are not supported by hard evidence in the medical literature." In Dr. Oetgen's view, "there is no reasonable certainty that Mr. Malin's occupational exposure was a substantial factor in either his development of carcinoid tumors or their progression." On the contrary, "[i]t appears likely that other underdetermined factors contributed to the development of his disease to a greater extent than this occupational exposure."

Based on Dr. Oetgen's findings, the BJA initially denied Mr. Malin's claim, determining, among other things, that "[t]he record does not demonstrate . . . that Officer Malin's disability was the direct result of an injury sustained in the line of duty . . . ." Mr. Malin then requested a determination of his claim by a hearing officer, who also concluded that Mr. Malin did not establish the requisite causation.

Mr. Malin appealed the Hearing Officer's decision to the BJA Director. The Director affirmed, finding that she

could not conclude that "Officer Malin suffered any expo-
sure, or traumatic condition attributable to an exposure
at the New Paltz Office such that it would constitute an
'injury' under the PSOB program." J.A. 154. The Direc-
tor noted that although there was evidence of arsenic,
lead, and DDT in the soil around the Region 3 office, there
was no evidence that these contaminants were present in
locations where employees would come into contact with
them. It was significant, according to the Director, that
the air and surface samples detailed in the Contamina-
tion Report had no detectable levels of contaminants.
Even assuming that Mr. Malin's field work put him at
increased risk for developing or worsening carcinoid
tumor, such increased risk is, according to the Director,
"equivalent to 'occupational disease,'" which is not an
"injury" under the PSOB Act. J.A. 155.

Mr. Malin appeals the BJA's final determination. We
have jurisdiction under 42 U.S.C. § 3796c-2.

## DISCUSSION

We review the BJA's final determination to deny
claims under the PSOB Act to determine "(1) whether
there has been substantial compliance with statutory
requirements and provisions of implementing regulations;
(2) whether there has been any arbitrary or capricious
action on the part of the government officials involved;
and (3) whether substantial evidence supports the deci-
sion denying the claim." *Moore v. Dep't of Justice*, 760
F.3d 1369, 1372 (Fed. Cir. 2014) (internal quotations
omitted). "Substantial evidence" is "such relevant evi-
dence as a reasonable mind might accept as adequate to
support a conclusion." *Consolo v. Fed. Mar. Comm'n*, 383
U.S. 607, 620 (1966) (quoting *Consolidated Edison Co. of
New York v. NLRB*, 305 U.S. 197, 229 (1938)). Here, we
review the BJA's final determination to determine wheth-
er substantial evidence supports its finding that
Mr. Malin did not establish that he was exposed to con-

taminants at the Region 3 office and that this exposure caused the deterioration of his condition.

The PSOB Act provides that where "the [BJA] determines that a public safety officer has become permanently and totally disabled as the *direct and proximate* result of a personal *injury* sustained in the line of duty, the Bureau shall pay the same benefit to the public safety office . . . ." 42 U.S.C. § 3796(b) (emphases added). The PSOB Act's implementing regulations provide that an "injury" means:

> a traumatic physical wound (or a traumatized physical condition of the body) directly and proximately caused by external force (such as bullets, explosives, sharp instruments, blunt objects, or physical blows), chemicals, electricity, climatic conditions, infectious disease, radiation, virii, or bacteria, but does not include—
>
> (1) Any occupational disease; or
>
> (2) Any condition of the body caused or occasioned by stress or strain.

28 C.F.R. § 32.3. An "occupational disease" is "a disease (including an ailment or condition of the body) that routinely constitutes a special hazard in, or is commonly regarded as a concomitant of, an individual's occupation." *Id.* The implementing regulations further define "direct and proximate cause" as a "substantial factor." *Id.* A factor is a "substantial factor" if it is one that was "sufficient to have caused" the injury or "[n]o other factor (or combination of factors) contributed to the [injury] to so great a degree as it did." *Id.*

Mr. Malin argues that the BJA erred because the evidence he cited clearly supports a finding that the exposure to contaminants at the Region 3 office exacerbated his carcinoid tumors. Appellant's Br. 7–8. As Mr. Malin points out, Dr. Warner stated in his December 1997 letter that it was "logical" to conclude that the deterioration of

Mr. Malin's condition was accelerated by exposure to contaminants at the Region 3 office. J.A. 11. Dr. Warner further testified that Mr. Malin's alleged exposure to the contaminants played some role in the worsening of his symptoms. J.A. 86–87.

Dr. Warner's testimony, however, assumed that Mr. Malin had been exposed to contaminants. *See* J.A. 86. The Contamination Report calls this assumption into question as it found no detectable levels of lead or DDT in the Region 3 office. Supplemental App'x. (S.A.) 58. The New York State Department of Health also found that it was unlikely that an employee would be exposed to contaminants outside of the Region 3 office because the property is generally covered by grass. S.A. 48. Similarly, Jean Edouard concluded that contaminated soil was "bound by vegetation and not free to become airborne." S.A. 53. It was not clear that the contaminants posed a threat for occupational exposures because there was "no evidence that these substances are actually present where employees might come into contact with them." *Id.* Based on these findings, Dr. Oetgen concluded "there is no reasonable certainty that Mr. Malin's occupational exposure was a substantial factor in either his development of carcinoid tumors or their progression." S.A. 44. Substantial evidence thus supports the BJA's finding that Mr. Malin has not established that he was exposed to contaminants at the Region 3 office. Because such an exposure is a prerequisite to Mr. Malin's claim, substantial evidence supports the BJA's determination that the deterioration of Mr. Malin's condition was not a "direct and proximate" result of his work at the Region 3 office.

Mr. Malin also suggests that he should receive PSOB benefits based on the fact that he was granted workers' compensation and disability retirement benefits. *See* Appellant's Br. 5–6. The workers' compensation award, however, was expressly predicated on a finding that Mr. Malin suffered an "occupational disease," J.A. 103,

which is not an "injury" under the PSOB Act. 28 C.F.R. § 32.3. The disability retirement award was similarly based on various unspecified exposures, J.A. 107–08, which amount to an occupational disease. 28 C.F.R. § 32.3. Accordingly, Mr. Malin's successful claims for workers' compensation and disability retirement benefits do not establish error in the BJA's decision.

CONCLUSION

For the foregoing reasons, we affirm the final determination of the BJA.

**AFFIRMED**

No Costs.