HUGHES, Circuit Judge, joined by CHEN, Circuit Judge, dissenting from the judgment. We took this case en banc to resolve the seemingly straightforward question of whether the statute at issue unambiguously requires the burden of persuasion for motions to amend to remain with the petitioner. A clear majority of the court has decided that it does not. That conclusion alone should resolve the case and require deference'to the Director’s clear and consistent interpretation of an ambiguous statute that he is entitled to interpret, as evidenced by the Director’s regulatory interpretation of the statute and further definitive interpretations of that regulation. But rather than following traditional rules of administrative law when faced with an ambiguous statute, i.e., determining whether the agency’s interpretation is reasonable, we find fault in the sufficiency of the Director’s rulemaking procedure—an issue raised for the first time by judges of. this court without briefing or argument from the parties. We err in our role as an appellate court to provide clear rules. Rather, we have compiled five separate opinions numbering over one-hundred pages that provide varying reasons for affirmance or reversal. Reasonable minds can differ about the core issue of this case—plain meaning or not—but the complicated reasons of the majority for the judgment of vacatur do a serious disservice to the issue at hand, and to a stable interpretation of the law. For the reasons set forth below, I concur in part, and respectfully dissent from the judgment of vacatur. I fully join Judge Taranto’s opinion, which concludes that the statutory language at issue does not dictate who bears the burden of proof on motions to amend claims under 35 U.S.C. § 316(d).[1] The statute delegates rulemaking authority to the Patent and Trademark Office for the conduct of inter partes reviews generally, and to set procedures for the amendment of claims specifically. In exercising this grant of statutory authority, the PTO engaged in notice and comment rulemaking, and placed the burden of proof for all motions on movants. In adopting this rule, the PTO expressly considered the amendment provision in its regulation, but declined to provide an exception for motions to amend. That clear regulatory command was within its authority, is entitled to Chevron deference, and should resolve this case. I write separately for two reasons. First, to note that even if the scope of the PTO’s regulation—37 C.F.R. § 42.20(c)—on the burden of proof for motions is ambiguous, the PTO is still entitled to Auer deference for its interpretation of its own regulation. Auer v. Robbins, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). As this court and the Supreme Court have repeatedly found, an agency’s interpretation of its own regulation is “controlling unless plainly erroneous or inconsistent with the regulation.” Id. at 461, 117 S.Ct. 905 (citation and internal quotation marks omitted). Therefore, I would defer to the PTO’s reasoned interpretation of its own regulation placing the burden of proof for all motions upon the moving party to include motions to amend. It is in fact the most reasonable reading of that regulation. Thus, I would affirm. Second, to address the notion that Congress’s use of the word “regulation” in a statute delegating authority to an agency limits that agency’s authority to promulgating regulations codified in the Code of Federal Regulations (CFR). This is a novel approach to administrative law, without support in precedent or in any statute. The term “regulations” has routinely been found to cover other forms of agency authority. By suggesting that delegation statutes using the word “regulation” narrowly confine agency action to the CFR, this court may “make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise.” SEC v. Chenery Corp., 332 U.S. 194, 202, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947). I The question of who bears the burden of proof on motions to amend is guided by the well-established two-step Chevron framework. Suprema, Inc. v. Int’l Trade Comm’n, 796 F.3d 1338, 1346 (Fed. Cir. 2015) (en banc) (discussing Chevron framework). At step one, we look to whether “Congress has directly spoken to the precise question at issue” because, “[i]f the intent of Congress is clear, that is the end of the matter.” Chevron, U.S.A, Inc. v. Nat Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). When the statute is “silent or ambiguous with respect to the specific issue” in dispute, we must proceed to step two. Id. at 843, 104 S.Ct. 2778. At this step, we deem that “Congress has explicitly left a gap for the agency to fill,” and our task is simply to determine “whether the agency’s answer is based on a permissible construction of the statute.” Id. A For the reasons discussed by Judge Tar-anto, I agree that the statute is sufficiently ambiguous for the PTO to clear the first step of Chevron. At step two, we are assessing whether the agency’s interpretation “is based on a permissible construction of the statute.” Chevron, 467 U.S. at 843, 104 S.Ct. 2778. A permissible interpretation is one that is not “arbitrary or capricious in substance, or manifestly contrary to the statute.” Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 53, 131 S.Ct. 704, 178 L.Ed.2d 588 (2011) (citation and internal quotation marks omitted). Under this deferential standard, even if the agency’s view is not “the only possible interpretation, nor even the interpretation deemed most reasonable by the courts,” we are obligated to defer to it as long as it is a reasonable interpretation. Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 218, 129 S.Ct. 1498, 173 L.Ed.2d 369 (2009) (emphasis in original). Once we determined that the statute is silent or ambiguous, “the question for the court [is] whether the agency’s answer is based on a permissible construction of the statute.” INS v. Aguirre-Aguirre, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778). If the agency’s interpretation is not in conflict with the statute and represents “a reasonable policy choice for the agency to make,” we must defer to it. Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 986, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (quoting Chevron, 467 U.S. at 845, 104 S.Ct. 2778); see also Cuozzo Speed Techs., LLC v. Lee, — U.S. -, 136 S.Ct. 2131, 195 L.Ed.2d 423 (2016) (rejecting Cuozzo’s statutory arguments and concluding that the PTO’s choice for a claim construction rubric was reasonable under the statute, without considering whether the PTO had evaluated Cuozzo’s statutory arguments during the rulemaking process). The PTO’s regulation regarding where the burden of proof lies on motions, 37 C.F.R. § 42.20, is not arbitrary, capricious, or manifestly contrary to the statute. The regulation was promulgated in accordance with the procedures described in § 558 of the APA, which included notice and an opportunity for public comment. 5 U.S.C. § 553(c). In both the proposed rulemaking and final rule, the PTO emphasized to the public that this rule governing the burden of proof for motions would also apply to motions to amend. Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 6879, 6885 (proposed Feb. 9, 2012) (hereinafter 2012 Notice); Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48,612, 48,619 (Aug. 14, 2012) (hereinafter 2012 Final Rule). While there were comments regarding certain aspects of amending claims, no one raised comments on the PTO’s proposal to place the burden of proof on motions, including motions to amend, on the movant. This may be because “[pjerhaps the broadest and most accepted idea is that the person who séeks court action should justify the request.” Frolow v. Wilson Sporting Goods Co., 710 F.3d 1303, 1312 (Fed. Cir. 2013) (quoting Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 56, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005)). Accordingly, in the face of statutory ambiguity, placing the burden of proof on movants by adopting 37 C.F.R. § 42.20 through notice and comment rulemaking is a permissible reading of the statute, and the PTO’s regulation should receive deference under Chevron step two. B Despite the preceding, Judge O’Malley and Judge Reyna find that the PTO has not done enough to warrant deference under Chevron. See O’Malley Op. at 1316-22; see also Reyna Op. .at 1335 (faulting the agency for not “fully considering] the inter partes review statutes, 35 U.S.C. § 316(a)(9), (d), and (e) .... ”). This I cannot agree with. The 2012 rulemaking specifically mentioned that § 42.20 “would place the burden of proof on the moving party,” and would apply to “requests to amend the patent.” 2012 Notice, 77 Fed. Reg. at 6885. The PTO considered not only the inter partes review statutes but specifically motions to amend when proposing allocating the burden of proof for motions on the movant. The PTO’s failure to explicitly mention 35' U.S.C. § 316(a)(9), (d), and (e) does not mean its proposed regulation was defective. Rather, it necessarily implies that the PTO understood that the inter partes review statutes were ambiguous or silent as to the allocation of proof on a motion to amend, and so did the public, as no one urged otherwise. More importantly, Chevron step two does not require, as a threshold matter, the agency to perform a comprehensive statutory analysis during rulemaking to justify each promulgation of a new regulation. Nor does Chevron step two direct us to conduct a hyperteehnical review of an agency’s exercise of its discretion. Our inquiry is much more limited: “we are simply conducting a reasonableness review, we treat the [agency’s] interpretation as controlling unless it has reached a conclusion that is arbitrary, capricious, or manifestly contrary to the statute.” Mahmood v. Sessions, 849 F.3d 187, 195 (4th Cir. 2017) (emphasis in original) (citation and internal quotation marks omitted). And here, the PTO’s conclusion is neither manifestly contrary to the statute nor arbitrary or capricious. As best I can tell, my colleagues’ conclusion would force an agency to use specific magic words before its exercise of discretion can receive deference. In other words, Chevron step two would be transformed into a de novo review of the agency’s choices, where we ho longer test the reasonableness of the agency’s conclusion but examine in detail its mode of reasoning. This will turn agency rulemaking on its head, and the facts of today’s case illustrate the herculean task we are placing on agencies. In 2012, when the PTO proposed placing the burden of proof for motions to amend on movants, not a single eommen-ter raised concerns that § 316(e) precludes the PTO from placing the burden on a movant. Between the promulgation of § 42.20 and today’s case, I could not find a single party who complained before this court that the § 42.20 was promulgated in a defective manner because the PTO failed to discuss § 316(e). And even in today’s ease, Aqua did not argue that § 42.20 was procedurally defective because of a failure to discuss § 316(e); it essentially conceded that if the inter partes statutes were ambiguous, the PTO could place the burden of proof for motions to amend on movants. Yet, we now have several judges of this court that believe § 42.20 was promulgated in a defective way because the PTO did not explicitly mention 35 U.S.C. § 316(a)(9), (d), and (e). This line of thinking would force agencies in rulemaking to deal with any and all potential objections to the rule, including those never raised by any commenters, any parties, and raised for the first time, sua sponte, by judges in an opinion. In other words, agencies can no longer be sure that any promulgated rule will withstand judicial review and the sua sponte ideas of courts. The Supreme Court’s decision in Negusie v. Holder does not compel a different conclusion. 555 U.S. 511, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2011). In Negusie, the agency mistakenly believed that its interpretation of a statute was compelled by a prior Supreme Court case. Id. at 518, 129 S.Ct. 1159. In the context of the Chevron framework, the agency stopped its analysis at step one, believing that it had no discretion to interpret the statute. Id. at 523, 129 S.Ct. 1159 (“[I]f an agency erroneously contends that Congress’ intent has been clearly expressed and has rested on that ground, we remand to require the agency to consider the question afresh in light of the ambiguity we see.”) (quoting Cajun Elec. Power Coop., Inc. v. FERC, 924 F.2d 1132, 1136 (D.C. Cir. 1991)). Since the agency stopped at step one, the agency,never exercised its Chevron discretion to interpret the statute in question. Thus, the Supreme Court remanded the case for the agency to consider the statute under step two of Chevron. Here, the PTO did reach step two of Chevron and exercised its discretion to pass, using notice and comment procedures, a regulation placing the burden of proof on the movants. Moreover, while I believe the PTO exercised its discretion and sufficiently explained its reasoning, even if it had not, I question the wisdom of remanding this case back to the agency solely because of the mistaken belief that the PTO failed to adequately explain its reasoning. See, e.g., PDK Labs. v. DEA, 362 F.3d 786, 808-09 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment). “The rationale that animates all Prill[2] remands is real and genuine doubt concerning what interpretation the agency would choose if given the opportunity to' apply ‘any permissible construction.’ ” Id. at 809. Unlike Negusie and Prill, where the agency never had the opportunity to apply any permissible construction of the statute, we know how the PTO would choose to interpret this ambiguous statute because the PTO already reached “its interpretation ... in the course of a purely discretionary act.” Id. at 800; see also Nicholas Bagley, Remedial Restraint in Administrative Law, 117 COLUM. L. REV. 253, 300 n.326 (2017) (“Cases in which an agency changes its mind in response to Prill remands are rare, and the circumstances tend to be unusual.”). Indeed, when confronted with questions regarding the scope of § 42.20, and particularly, the effect of § 316(e), the PTO has clearly and consistently stated that the burden of proof imposed by § 42.20 applies to motions to amend, even in light of § 316(e). Idle Free Sys., Inc. v. Bergstrom, Inc., No. IPR2012-00027, 2013 WL 5947697, at *4 (P.T.A.B. June 11, 2013); MasterImage 3D, Inc. v. RealD Inc., No. IPR2015-0040, 2015 WL 10709290, at *1 (P.T.A.B. July 15, 2015); 2012 Notice, 77 Fed. Reg. at 6885; 2012 Final Rule, 77 Fed. Reg. at 48,619. Even if we accept that some deficiency exists in the initial rule-making, a remand is unnecessary because there is no “real and genuine doubt concerning what interpretation the agency would choose.” PDK Labs., 362 F.3d at 808. C Moreover, even if the burden of proof regulation was unclear in the scope of its application, in accordance with Auer, we would still be required to affirm the PTO’s interpretation here. Auer, 519 U.S. at 461, 117 S.Ct. 905; see also Cass R. Sunstein & Adrian Vermeule, The Unbearable Rightness of Auer, 84 U. Chi.' L. Rev. 297 (2017). While § 42.20 is a general regulation governing the burdens on motions, no one has adequately explained why, assuming the statute is ambiguous, it should not apply to the more specific context of motions to amend. I believe that it must. During proposed rulemaking, the PTO specifically mentioned motions to amend in discussing its proposed general rules for motion practice. The adopted regulation contains no exception for motions to amend, and if we require a general regulation to specify what specific types of motions that fall under its umbrella, it would make the notion of a general regulation meaningless. Under Auer, an agency’s interpretation of its own regulation is given “controlling weight unless it is plainly erroneous or inconsistent with the regulation.” Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (citation and internal quotation marks omitted). Agency interpretations need not be well-settled or long-standing to be entitled to deference, but they must “reflect the agency’s fair and considered judgment on the matter in question.” Auer, 519 U.S. at 462, 117 S.Ct. 905. Auer deference is warranted even if the agency’s interpretation first appears during litigation, see Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 203, 131 S.Ct. 871, 178 L.Ed.2d 716 (2011), unless “the interpretation is nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack.” Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012) (citation and internal quotation marks omitted). Accordingly, if we have doubts regarding the applicability of § 42.20 to motions to amend, we are obligated to defer to the PTO’s interpretation under Auer unless it is “plainly erroneous or inconsistent with the regulation.” “It is well established that an agency’s interpretation need not be the only possible reading of a regulation—or even the best one—to prevail.” Decker v. Nw. Envtl. Def. Ctr., 568 U.S. 597, 613, 133 S.Ct. 1326, 185 L.Ed.2d 447 (2013). An agency’s view need only be reasonable to warrant deference. Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991) (“[I]t is axiomatic that the [agency’s] interpretation need not be the best or most natural one by grammatical or other standards. Rather, the [agency’s] view need be only reasonable to warrant deference.” (internal citation omitted)). The inter partes regulations were promulgated by the PTO in 2012. In adopting § 42.20, the PTO made clear that the regulation would place the burden of proof on the movant. To the extent this regulation of general applicability did not call out specific categories of motions that fall under its umbrella, it is entirely reasonable for the PTO to interpret this regulation as applying to motions to amend, especially when it specifically expressed that intention during its rulemaking. 2012 Notice, 77 Fed. Reg. at 6885; 2012 Final Rule, 77 Fed. Reg. 48619. And it certainly is not inconsistent with the text of the regulation.[3] This interpretation is also not a convenient litigating position or a post-hoc rationalization of the PTO’s decisionmaking. The PTO has consistently enforced this position since 2012. In 2013, the PTAB concluded that 37 C.F.R. § 42.20(c) places the burden for motions to amend on the patent owner. Idle Free, 2013 WL 5947697, at *4. In the spring of 2014, the PTO conducted various “roundtables” with the public, making presentations and receiving informal comments on practice under the new rules. In at least some of the roundtables, the PTO showed a slide on “Motions to Amend” that listed the “need to show patentable distinction” and cited Idle Free. See U.S. Patent & Trademark Office, AIA Trial Roundtables, slide 35, (April 15, 2014), available at https://www.uspto.gov/ ip/boards/bpai/ptab_roundtable_slides-may_update_20140503.pdf (April 15, 2014). In June 2015, we held that it was permissible to assign'to the patent owner the burden of persuasion on patentability of a proposed substitute claim. Microsoft Corp. v. Proxyconn, Inc., 789 F.3d 1292, 1307 [Fed. Cir. 2015). The next month, a six-member Board panel issued a “clarification” of Idle Free. MasterImage, 2015 WL 10709290, at *1. In making that clarification, which concerned what subjects the patent owner must address in a motion to amend, the Masterlmage panel reaffirmed that “[t]he ultimate burden of persuasion remains with Patent Owner, the movant, to demonstrate the patentability of the amended claims,” citing Proxyconn. Id. The Masterlmage order was designated “precedential,” under Standard Operating Procedure 2 (rev. 9), which requires the concurrence of the Director. In August 2015, when issuing her 2015 Proposed Rule, the Director confirmed that the burden of persuasion rested on the patent owner and set forth reasons why this assignment of the burden serves important policy objectives. She stated that she would not shift the assignment of “the ultimate burden of persuasion on pat-entability of proposed substitute claims from the patent owner to the petitioner.” Amendments to the Rules of Practice for Trials Before the Patent Trial and Appeal Board, 80 Fed. Reg., 50,720, 50,723 (proposed Aug. 20, 2015). The Director reaffirmed that the patent owner bears the burden of persuasion as to amendments in her final regulatory amendments in 2016. Amendments to the Rules of Practice for Trials Before the Patent Trial and Appeal Board, 81 Fed. Reg. 18,750,18,754-55 (April 1, 2016). Thus, the PTO has consistently, since 2012, maintained that the burden of proof for motions to amend falls on the movant. As such, this position is neither a convenient litigating position nor a post-hoc rationalization of the PTO’s decisionmaking. And if there is any ambiguity regarding the applicability of § 42.20 to motions to amend, Auer requires us to defer to the PTO’s interpretation. II Finally, I am deeply - troubled by the suggestion that, by using the word “regulation” in a statute, Congress intended to foreclose all means of statutory or regulatory interpretation other than notice and comment rulemaking. O’Malley Op. at 1319-20; Moore Op. at 1329-31. This position would severely curtail the PTO’s authority to regulate its own proceedings by forcing the agency to codify rules on every procedural issue, even those that are interpretations of existing regulations. This remarkable proposition contradicts both the Supreme Court and our own precedent, and drastically changes administrative law as we know it. Thus, I disagree that § 316(a) limits the Director’s authority to the issuance of regulations appearing in the CFR. I start with the general principle that agencies, including the PTO, have wide discretion in choosing how to regulate. The Supreme Court has long recognized that “[a]ny rigid requirement” for legislative rulemaking “would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise.” Chenery, 332 U.S. at 202, 67 S.Ct. 1760. Nor is legislative rulemaking a prerequisite for Chevron deference. In United States v. Mead, the Supreme Court explained that “administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.” 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). The fact that an agency “reached its interpretation through means less formal than ‘notice and comment’ rulemaking does not automatically deprive that interpretation of the judicial deference otherwise its due.” Barnhart v. Walton, 535 U.S. 212, 221, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002) (internal citation omitted). Here, the statutory scheme indicates that Congress intended to give broad discretion to the PTO to regulate IPR proceedings. 35 U.S.C. § 2(b)(2)(A) gives the PTO authority to “establish regulations, not inconsistent with law, which shall govern the conduct of proceedings in the [PTO].” And 35 U.S.C. § 316 further delegates authority to the Director to regulate IPR procedure, including grounds for review, standards for discovery, and the standard for amending claims. Given this statutory delegation of authority, we have long recognized that “the broadest of the [PTOj’s rulemaking powers is the power to” establish rules governing its own proceedings. Stevens v. Tamai, 366 F.3d 1325, 1333 (Fed. Cir. 2004). Indeed, “we understand Congress to have ‘delegated plenary authority over PTO practice’ ” Id. (emphasis added) (internal citation omitted). Of course, Congress may limit the agency’s discretion by statute. Judge O’Malley and Judge Moore argue that Congress did so by using the word “regulation” in § 316(a), which supposedly constrains the PTO’s regulatory authority to notice and comment rules codified in the CFR only. However, using a generic term like “regulation” does not mean Congress “expressly determine[d] upon what and how the Director may promulgate rules.” Moore Op. at 1330 (emphasis in original). The terms “regulation” and “rales” are often used interchangeably. For example, in Cuozzo, the Supreme Court considered the very same statutory provision before us now, and explained that § 316(a) “allows the Patent Office to issue rules.” 136 S.Ct. at 2142; id. at 2137 (“[§ 316(a)] grants the Patent Office-, the authority to issue rules.”). And a “rale” under the APA is broadly defined as “the whole or a part of an agency statement of general or particular applicability and future effect. ...” 5 U.S.C. § 551(4). Moreover, our own precedent confirms that “regulations” is not limited to rules codified in the CFR. For example, we held that Congress’s delegation of authority to “establish regulations” to govern proceedings at the PTO meant that we would afford Chevron deference to an interpretative rule published in the Federal Register, even though it did not result in a regulation codified in the CFR. Cooper Techs. Co. v. Dudas, 536 F.3d 1330, 1337 (Fed. Cir. 2008). And in Groff v. United States, we held that the Bureau of Justice Assistance’s (BJA) legal interpretations announced through adjudication were entitled to Chevron deference. 493 F.3d 1343, 1348 (Fed. Cir. 2007). In Groff, the statute allowed the BJA to establish “rules, regulations, and procedures” to administer a benefits program for public safety officers. Id. In that case, we refused to limit the BJA’s regulatory authority to notice-and-comment rulemaking. Id. at 1350. Instead, we explained that, by authorizing the BJA to establish rules, regulations, and procedures, “Congress intended for the BJA’s statutory interpretations announced through adjudication to have the force of law, and that those interpretations are therefore entitled to deference under Chevron.” Id. Likewise, other regional circuits have afforded Chevron deference to legal interpretations not codified in the CFR, even though the delegating statutes use the word “regulation.” For example, 29 U.S.C. § 1135 states that “the Secretary [of Labor] may prescribe such regulations as he finds necessary or appropriate to carry out [certain] provisions” of the Employee Retirement Income Security Act. (emphasis added). In Tibbie v. Edison International, the Ninth Circuit applied Chevron deference to the Department of Labor’s legal interpretation announced through a preamble to a rule. 729 F.3d 1110, 1122 (9th Cir. 2013) vacated on other grounds, — U.S. -, 135 S.Ct. 1823, 191 L.Ed.2d 795 (2015). The preamble was published in the Federal Register, but not codified in the CFR. Id. Nevertheless, the court explained that where Congress gave the Secretary of Labor the authority to prescribe regulations, Chevron deference is not limited “to materials destined for the pages of the Code of Federal Regulations.” Id. As another example, the Federal Food, Drug, and Cosmetic Act (FDCA) gives the FDA authority to “promulgate regulations for the efficient enforcement” of the statute. 21 U.S.C. § 371(a) (emphasis added). In Mylan Laboratories, Inc. v. Thompson, the D.C. Circuit expressly rejected the argument that “minimal deference is owed to the FDA’s interpretation of the FDCA because it was expressed in letters to the parties and ‘is not embodied in any regulation, much less a regulation that was subject to notice and comment rulemaking.’ ” 389 F.3d 1272, 1279 (D.C. Cir. 2004) (internal citations omitted). The court explained that “ ‘the want of notice and comment does not decide the case’ against Chevron deference.” Id. (quoting Barnhart v. Walton, 535 U.S. 212, 222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002)); see also Apotex, Inc. v. FDA, 226 Fed.Appx. 4, 5 (D.C. Cir. 2007) (per curium) (holding that Chevron deference applies to FDA’s statutory interpretation of the FDCA announced through informal adjudication). Other courts have similarly held that notice and comment rulemaking resulting in codification in the CFR is not required for Chevron deference. See, e.g., Miccosukee Tribe of Indians of Fla. v. United States, 566 F.3d 1257, 1273 (11th Cir. 2009) (giving Chevron deference to Fish & Wildlife Service Handbook that was not published in the CFR); Citizens Exposing Truth About Casinos v. Kempthorne, 492 F.3d 460, 467 (D.C. Cir. 2007) (holding that a publication in the Federal Register is entitled to Chevron deference). I could not find a definition of “regulation” limiting it to codified agency pronouncements appearing in the CFR and I have not been able to find any support in the AIA or APA for such a narrow interpretation. Nor, apparently, have my colleagues, since their opinions do not explain how they derived their interpretation of “regulation” other than to state their conclusion based, presumably, on their plain language interpretation of the term “regulation.” Contrary-to their position, the PTO has broad discretion over how it regulates IPR procedures. And the word “regulation” in § 316(a) does not restrict that authority, as Congress “does not alter the fundamental details of a regulatory scheme” through generic or vague terms. Whitman v. Am. Trucking Ass’ns, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). Aside from the fact that § 316(a) does not limit the PTO’s authority to regulations codified in the CFR, another fallacy in my colleagues’ position is that the PTO did promulgate regulations on the standards and procedures for amending patents. In particular, the PTO established § 42.20 through notice and comment rule-making. 2012 Notice, 77 Fed. Reg. at 6885; 2012 Final Rule, 77 Fed. Reg. 48619. And the PTO made clear that § 42.20 applies to motions to amend. 2012 Notice, 77 Fed. Reg. at 6885. Likewise, the PTO also promulgated § 42.121, which details the timing, scope and content for motions to amend. Therefore, even if the term “regulation” requires an agency to adopt rules through notice and comment rulemaking, the PTO has done so by promulgating a rule that places the burden of proof on movants as a general matter. To the extent these regulations fail to address a specific factual scenario, the PTO can clarify or interpret its own regulations without resorting to additional rule-making. Shalala v. Guernsey Mem’l Hosp., 514 U.S. 87, 96, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995) (“The APA does not require that all the specific applications of a rule evolve by further, more precise rules rather than by adjudication.”). Accordingly, the PTO’s subsequent clarification of its own regulations in Masterlmage and Idle Free is at least entitled to Auer deference.[4] “Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations.” NLRB v. Bell Aerospace Co. Div. of Textron, 416 U.S. 267, 293, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). The choice of how to interpret the agency’s statutes and regulations “lies in the first instance within the [agency’s] discretion.” Id. at 294, 94 S.Ct. 1757. The fact that Congress uses the term “regulation” does not foreclose the PTO from interpreting its own rules through guidance documents or adjudication. If my colleagues believe that “regulations” in § 316(a) means the Director may only interpret the agency’s own regulations by promulgating even more regulations codified in the CFR, this is a dramatic upheaval of administrative law. See O’Malley Op. at 1319-21, Moore Op. at 1329. As I have discussed, the use of the word “regulation” does not support the notion that Congress expressly intended to limit the PTO to rulemaking in all instances. And I can find nothing else that suggests Congress intended to constrain the PTO’s ability to interpret its own regulations. Mead acknowledged that Congress can implicitly delegate agency authority by, for example, “provid[ing] for a relatively formal administrative procedure.” Mead, 533 U.S. at 230, 121 S.Ct. 2164. Considering that Congress delegated authority to the PTO to regulate motions to amend, I find it implausible that Congress would undermine the PTO’s ability to clarify or expound on its own rules using relatively formal adjudication like IPRs. This new approach to administrative law has ramifications far beyond this case. For example, consider the PTO’s regulation that a motion to amend cannot “introduce new subject matter” to the patent. 37 C.F.R. § 42.121(a)(2)(H). If the PTO sought to clarify what type of amendments constitute “new subject matter,” the agency might now, despite long-established precedent to the contrary, have to promulgate regulations in the CFR, using notice and comment rulemaking, for each and every example of “new subject matter.” Essentially, when the PTO is confronted with a new issue in an IPR that it has not foreseen and accounted for in the CFR, it will not able to deal with that issue in a more timely and efficient manner. Instead, it will have to promulgate regulations in the CFR through a drawn-out rulemaking process. Such a rigid constraint on the PTO will “make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise.” Chenery, 332 U.S. at 202, 67 S.Ct. 1760. Ill Accordingly, I would affirm. From the contrary judgment of Judge O’Malley, Judge Moore, and Judge Reyna, I respectfully dissent. . I agree with Judge Reyna that the patent owner bears the burden of production on motions to amend claims. I therefore join Part III of his opinion. . In Prill v. NLRB, 755 F.2d 941, 948 (D.C. Cir. 1985), the D.C. Circuit remanded a case to the agency because "a regulation [was] based on an incorrect view of applicable law.” . For the reasons expressed in Judge Taran-to's opinion, which explains how a motion to amend, per 35 U.S.C. § 316(d), is a "motion to amend the patent”—not merely a motion to have a proposed substitute claim added to the proceeding—I find Judge O'Malley's counterargument to be without merit. . Judge O’Malley and Judge Moore’s opinions do not reach the question of whether the Board’s opinions in Masterlmage and Idle Free are entitled to Auer deference. However, I believe that a proper application of Auer should lead this court to defer to the Board's legal interpretations in those decisions and affirm the decision below, even under my colleagues’ narrow interpretation of the term "regulation.”